IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Heartland Publications, LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-14459 (KG)<br><br>Jointly Administered<br><br>Objection Deadline: January 6, 2010 at 4:00 p.m. (ET)<br>Hearing Date: January 13, 2010 at 10:00 a.m. (ET)<br><br>Waiver of Local Rule 2016-2(d)(iv) Requested |

## DEBTORS' APPLICATION FOR ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a), FED R. BANKR. P. 2014 AND DEL BANKR. L.R. 2014-1 (I) AUTHORIZING AND APPROVING EMPLOYMENT AND RETENTION OF DUFF & PHELPS SECURITIES, LLC AS FINANCIAL ADVISOR AND INVESTMENT BANKER *NUNC PRO TUNC* TO THE PETITION DATE AND (II) WAIVING CERTAIN INFORMATION REQUIREMENTS OF DEL. BANKR. L.R. 2016-2

The above-captioned debtors and debtors-in-possession (the "Debtors") hereby submit this application (the "Application") for entry of an order, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Code for the District of Delaware (the "Local Rules"), authorizing and approving the employment and retention of Duff & Phelps Securities, LLC ("Duff & Phelps") as financial advisor and investment banker to the Debtors, nunc pro tunc to the commencement of these chapter 11 cases. In support of this Application, the Debtors rely upon the Declaration of Jon C. Melzer (the "Melzer Declaration), a copy of which is attached hereto as Exhibit 1. In further support of the Application, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Heartland Publications, LLC (5642) and Heartland Publications Holdings, LLC (5683). The mailing address for each of the Debtors is 1 West Main Street, Clinton, CT 06413.

DB02:8987050.2

068674.1001

## INTRODUCTION AND JURISDICTION

1. On December 21, 2009 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. An official committee has not yet been established in these cases. No request has been made for the appointment of a trustee or examiner.

3. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 327, 328 and 330 of the Bankruptcy Code, along with Bankruptcy Rule 2014.

4. Additional information about the Debtors' business, the events leading up to the Petition Date and the facts and circumstances surrounding the Debtors and these chapter 11 cases can be found in the Declaration of Michael C. Bush In Support of Chapter 11 Petitions and First Day Pleadings filed on the Petition Date, which is incorporated herein by reference as if fully set forth herein.

## RELIEF REQUESTED

5. By this Application, the Debtors request the Court to enter an order: (i) authorizing the employment and retention of Duff & Phelps as financial advisor and investment banker to the Debtors in these chapter 11 cases, effective as of the Petition Date, pursuant to the terms and conditions of the letter agreement between the Debtors and Duff & Phelps, dated July

29, 2009, and as amended December 23, 2009 (together, the "Engagement Letter,"[2] a copy of which is attached to the Melzer Declaration as Exhibit C and incorporated by reference herein), as modified by the proposed order approving this Application; (ii) approving the terms of Duff & Phelps' employment, including the proposed fee structure and indemnification provisions, set forth in the Engagement Letter, as modified by the proposed order approving this Application; and (iii) granting such other and further relief as the Court deems appropriate.

## BASIS FOR RELIEF

6. The Debtors have been working closely with Duff & Phelps since late July 2009 when they selected Duff & Phelps to be their exclusive financial advisor and investment banker. Duff & Phelps has since become intimately familiar with the Debtors' businesses, affairs, assets and contractual arrangements. Accordingly, Duff & Phelps has acquired the necessary background to deal effectively and efficiently with the many financial issues that may arise in the context of the Debtors' chapter 11 cases.

7. The Debtors seek approval of the Engagement Letter, including the fee structure, pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. . . ." 11 U.S.C. § 328(a).

8. Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors and investment bankers, on more flexible terms that

---

[2] Capitalized terms used herein and not otherwise defined shall have the meanings given to such terms in the Engagement Letter.

reflect the nature of their services and market conditions, which is a significant departure from prior bankruptcy practice relating to the compensation of professionals. As the United States Court of Appeals for the Fifth Circuit recognized in In re National Gypsum Co., 123 F.3d 861, 862 (5th Cir. 1997) (citations omitted):

> Prior to 1978, the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. The uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants 'reasonable compensation' based on relevant factors of time and comparable costs, etc. Under present § 328 the professionals may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

Id. at 862 (internal references omitted). Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code. See, e.g., In re J.L. French Automotive Castings, Inc., No. 06-10119 (MFW) (Bankr. D. Del. March 24, 2006).

9. The fee structure appropriately reflects the nature and scope of services to be provided by Duff & Phelps, Duff & Phelps' substantial experience with respect to investment banking services and the fee structures typically utilized by Duff & Phelps and other leading investment bankers, who do not bill their clients on an hourly basis.

10. Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases in this Court and other courts. In re Lang Holdings, Inc., No. 09-12543 (KJC) (Bankr. D. Del. Aug. 21, 2009) (authorizing retention of Duff & Phelps on similar terms); In re Anchor Blue Retail Group, Inc., No. 09-11770 (PJW) (Bankr. D. Del. June 17, 2009) (same); In re Crucible Materials Corporation, No. 09-11582 (MFW) (Bankr. D. Del. May 28, 2009) (same); In re Mervyn's Holdings, LLC, No. 08-11586 (KG) (Bankr. D. Del. July 29, 2008) (same); In re Hines Horticulture, Inc., No. 08-11922 (KJC)

4

(Bankr. D. Del. Aug. 20, 2008) (same); In re Dura Automotive Systems, Inc., No. 06-11202 (KJC) (Bankr. D. Del. Oct. 30, 2006) (same); In re FLYi, Inc., No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006) (same); In re Foamex International, Inc., No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) (same); In re Oakwood Homes Corporation, No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (same); In re CTC Communications Group, Inc., No. 02-12873 (PJW) (Bankr. D. Del. Nov. 15, 2002) (same).

11. Furthermore, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, a change was made to section 328(a) which is highlighted in bold below:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, **on a fixed or percentage fee basis,** or on a contingent fee basis.

This change makes clear the ability of the Debtors to retain, with Court approval, a professional on a fixed fee basis such as the fee structure with Duff & Phelps in these chapter 11 cases.

12. Notwithstanding approval of its Engagement Letter under section 328 of the Bankruptcy Code, Duff & Phelps will apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, as those procedures may be modified or supplemented by order of this Court. Consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases whose fee arrangements are typically not hour-based, Duff & Phelps does not ordinarily maintain contemporaneous time records in one-tenth hour increments or provide or conform to a schedule of hourly rates for its professionals. Therefore, the Debtors submit that Duff & Phelps should be excused from compliance with such requirements.

13. In sum, the Debtors believe that the fee structure and other terms and conditions in the Engagement Letter, including the Indemnification Provision, are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The fee structure appropriately reflects (i) the nature and scope of the services to be provided by Duff & Phelps in these chapter 11 cases and work already performed by Duff & Phelps prior to the retention date and (ii) the fee structures typically utilized by Duff & Phelps and other leading financial advisory and investment banking firms in and out of the chapter 11 context. In particular, the Debtors believe that the proposed fee structure creates a proper balance between fixed monthly fees and contingency fees based on a successful sale and/or restructuring.

## DUFF & PHELPS' QUALIFICATIONS

14. The Debtors seek to employ Duff & Phelps as their exclusive financial advisor and investment banker because of Duff & Phelps' extensive experience and knowledge of the Debtors' business, financial affairs and capital structure, in addition to Duff & Phelps' expertise in business reorganizations under chapter 11 of the Bankruptcy Code. Since July 2009, Duff & Phelps professionals have been working closely with the Debtors' management and other professionals to review strategic options, obtain financing, coordinate the professional services necessary for Debtors' restructuring and prepare the Debtors to file these chapter 11 cases.

15. Duff & Phelps was founded in 1932 to provide high quality investment research. Over the next six decades, the firm diversified by adding investment banking, credit rating and investment management services. In 2005, Duff & Phelps strengthened its core valuation capabilities with the acquisition of Standard & Poor's Corporate Value Consulting business. Since then, Duff & Phelps has continued to expand and develop. In 2006, it acquired

6

DB02:8987050.2                                                                                                                                    068674.1001

Chanin Capital Partners, LLC, a specialty investment bank with a leading position advising stakeholders in distressed situations.

16. Duff & Phelps has extensive experience in providing restructuring and financial advisory services in reorganization proceedings, and has an excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States. The professionals of Duff & Phelps have been employed as financial advisors and investment bankers in a number of troubled company situations, including the chapter 11 cases in the District of Delaware of Lang Holdings, Inc., Anchor Blue Retail Group, Inc., Crucible Materials Corporation, Dura Automotive Systems and Calpine, among others. As such, the Debtors believe that Duff & Phelps is well-qualified and able to advise the Debtors in a cost-effective, efficient, and timely manner.

17. The Duff & Phelps professionals will be led by Jon C. Melzer. Mr. Melzer joined Duff & Phelps in 2008. He is managing director in the firm's New York office. Mr. Melzer has more than 20 years of experience in investment banking. Prior to joining Duff & Phelps, Mr. Melzer was Co-Head of Mergers and Acquisitions at Houlihan Lokey Howard & Zukin, Head of Consumer & Industrial Products at PricewaterhouseCoopers Securities, Head of Mergers & Acquisitions at Rodman & Renshaw, Inc. and Co-Head of Corporate Sales & Divestitures at The First Boston Corporation. He has successfully completed more than 150 transactions during his investment banking career.

## SCOPE OF SERVICES

18.  In accordance with the terms of the Engagement Letter, at the request and direction of the Debtors, Duff & Phelps will perform the following services, among others, to the extent they are desired or necessary:[3]

(a) Assist the Company in the preparation of cash flow projections and long-term financial projections;

(b) Render financial advice to the Company and participate in meetings or negotiations with the creditors and other stakeholders;

(c) Assist the Company in preparing a confidential information memorandum and other descriptive material to be provided to potential purchasers and/or parties to a restructuring transaction;

(d) Assist the Company in raising debt and/or equity capital to facilitate a restructuring;

(e) Prepare a list of potential purchasers including strategic parties and private equity firms;

(f) Contact potential purchasers to solicit their interest in the Sale and to provide them with the confidential information memorandum under a non-disclosure agreement;

(g) Participate in due diligence visits, meetings and consultations between the Company and interested potential purchasers and coordinate distribution of all information related to the Sale to such parties;

(h) Assist the Company with evaluating offers and selecting a purchaser which is ready, willing and able to consummate the Sale;

(i) Assist the Company in negotiating agreements and definitive contracts; and

(j) Organize and execute an auction, if necessary, with the objective of obtaining the best price and terms for the Sale.

---

[3] The description of the Engagement Letter is a summary only. To the extent that this Application and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

19. The Debtors require Duff & Phelps' advice and services in order to maximize the value of their estates. All of the services that Duff & Phelps will provide to the Debtors will be undertaken at the request of the Debtors and will be appropriately directed by the Debtors so as to avoid duplicative efforts among the professionals retained in these cases.

## COMPENSATION

20. As more fully described in the Engagement Letter, and subject to the Court's approval, the Debtors have agreed to pay the following compensation to Duff & Phelps in consideration of the services to be performed in these chapter 11 cases:

(a) <u>Monthly Advisory Fee</u>. A Monthly Advisory Fee of $100,000 per month commencing on the Petition Date and monthly thereafter.

(b) <u>General Restructuring Transaction Fee</u>. If during the term of this engagement or within 12 months following the termination of the engagement (the "<u>Residual Period</u>"), (i) any Restructuring Transaction is consummated or (ii) an agreement in principle, definitive agreement or Restructuring Plan to effect a Restructuring Transaction is entered into within such Residual Period and concurrently therewith or at any time thereafter, such Restructuring Transaction is consummated pursuant to such agreement or Restructuring Plan (as the same is amended or modified), Duff & Phelps shall be entitled to receive a Restructuring Fee in cash, contingent upon the consummation of a Restructuring Transaction and payable at the closing thereof equal to $850,000.

(c) <u>Transaction Fee</u>. If a Sale occurs either: (i) during the term of Duff & Phelps' engagement or (ii) at any time during the Residual period, the Company agrees to pay Duff & Phelps a success fee ("<u>Sale Fee</u>"), payable in cash concurrently with closing of the Sale, equal to the greater of (i) the sum of 1.25% of the first $115 million of Consideration and 3.0% of any Consideration above $115 million, and (ii) $850,000. In no event shall Duff & Phelps be entitled to both a Restructuring Fee and a Sale Fee, provided, however, if both fees are applicable, Duff & Phelps shall be entitled to the greater of the two fees.

(d) <u>Out-of-Pocket Expenses</u>. Duff & Phelps shall be reimbursed for its reasonable out-of-pocket and incidental expenses as documented for travel, meals, lodging, legal fees and other miscellaneous expenses, incurred during the term, and in furtherance, of its engagement, subject to reasonable documentation requirements. Such expenses exceeding

$50,000 require that Duff & Phelps seek the Debtors' prior written consent with respect to reimbursement.

21. Duff & Phelps has obtained valuable institutional knowledge of the Debtors' businesses and financial affairs as a result of providing services to the Debtors prior to the Petition Date. The Debtors submit that Duff & Phelps is both well qualified and uniquely able to perform these services and assist the Debtors in these chapter 11 cases. Moreover, the Debtors believe that without the skills and services of Duff & Phelps, their ability to reorganize would be hampered.

22. The fee structure is consistent with Duff & Phelps' normal and customary billing practices for comparably sized and complex cases, both in- and out-of-court, involving the services to be provided in these cases.

23. Duff & Phelps and the Debtors believe that the foregoing compensation arrangements are both reasonable and market-based. In determining the level of compensation to be paid to Duff & Phelps and its reasonableness, the Debtors compared Duff & Phelps' proposed fees with similar fees in other large and complex chapter 11 cases. The Debtors found Duff & Phelps' proposed fees to be reasonable and within the range of other comparable transactions.

24. To induce Duff & Phelps to do business with the Debtors in bankruptcy, the compensation structure described above was established to reflect the difficulty of the extensive assignments Duff & Phelps expects to undertake and the potential for failure.

25. Although Duff & Phelps does not charge for its services on an hourly basis, Duff & Phelps will maintain records in support of any actual and necessary costs and expenses incurred in connection with the rendering of its services in these cases. Accordingly, by this Application, the Debtors are seeking on behalf of Duff & Phelps, a waiver pursuant to Local Rule 2016-2(g) of the requirement to bill activities in one-tenths (.1) of an hour.

26. Duff & Phelps' strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Duff & Phelps' engagement hereunder, were important factors in determining the fee structure, and the Debtors believe that the ultimate benefit to the Debtors of Duff & Phelps' services hereunder cannot be measured by reference to the number of hours to be expended by Duff & Phelps' professionals in the performance of such services.

27. In addition, the fee structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Duff & Phelps and its professionals hereunder, and in the light of the fact that such commitment may foreclose other opportunities for Duff & Phelps and that the actual time and commitment required of Duff & Phelps and its professionals to perform its services hereunder may vary substantially from week to week or month to month.

28. In sum, in the light of the foregoing and given the numerous issues which Duff & Phelps may be required to address in the performance of its services hereunder, Duff & Phelps' commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Duff & Phelps' services for engagements of this nature both out-of-court and in a chapter 11 context, the Debtors believe that the fee structure is market-based and fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

29. Accordingly, as more fully described below, the Debtors believe that the Court should approve Duff & Phelps' retention subject to the standard of review set forth in

section 328(a) of the Bankruptcy Code and that Duff & Phelps' compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

30. As set forth in the Melzer Declaration, Duff & Phelps has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

## INDEMNIFICATION AND LIMITATION OF LIABILITY

31. As modified by the proposed order attached hereto, the Indemnification Provisions provide that the Debtors will indemnify and hold harmless Duff & Phelps and their affiliates (as defined in the Engagement Letter) from and against any and all loses, claims, damages, expenses, costs and liabilities, resulting directly or indirectly from any threatened or pending investigation, action, claim, proceeding or dispute in connection with the transactions contemplated by the Engagement Letter; provided, however, that such indemnity shall not apply for any portion of Losses (as defined in the Engagement Letter) which are judicially determined to have resulted primarily and directly from the willful misconduct, gross negligence or bad faith of any Indemnified Person seeking indemnification under the Engagement Letter.

32. The Debtors and Duff & Phelps believe that the Indemnification Provisions are customary and reasonable for restructuring and financial advisory services, both out-of-court and in chapter 11 cases, and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions. See, e.g., In re Tropicana Entertainment, LLC, No. 08-10856 (KJC) (Bankr. D. Del. May 5, 2008) (authorizing indemnification of Lazard Freres & Co. LLC by debtors); In re New Century TRS Holdings, Inc., No. 07-10416 (KJC) (Bankr. D. Del. Apr. 26, 2007) (same); In re Comdisco, Inc., No. 02-C-1174 (N.D. Ill. Sept. 23, 2002) (affirming order authorizing indemnification of Lazard Freres & Co. LLC and Rothschild, Inc. by debtors and official committee of unsecured creditors,

12
DB02:8987050.2 068674.1001

respectively); In re Joan & David Halpern, Inc., 248 B.R. 43 (Bankr. S.D.N.Y. 2000) (overruling U.S. Trustee's objection to indemnity provision); In re United Artists Theatre Company, No. 00-3514 (SLR) (Bankr. D. Del. Dec. 1, 2000) (authorizing indemnification of Houlihan, Lokey by debtors).

33. The terms and conditions of the Engagement Letter and the Indemnification Provisions were negotiated by the Debtors and Duff & Phelps at arms length and in good faith. The Debtors respectfully submit that the Indemnification Provisions, viewed in conjunction with the other terms of Duff & Phelps' proposed retention, are reasonable and in the best interests of the Debtors, their estates and creditors in light of the fact that the Debtors require Duff & Phelps' services to maximize the value of the estates for all parties in interest. Accordingly, as part of this Application, the Debtors request that the Court approve the Indemnification Provisions.

## **DISINTERESTEDNESS**

34. To the best of the Debtors' knowledge, and except as otherwise set forth in the Melzer Declaration attached hereto as <u>Exhibit 1</u>, (i) neither Duff & Phelps nor any employee thereof holds or represents an interest adverse to the Debtors or their estates; (ii) Duff & Phelps is a "disinterested person" within the meaning section 101(14) of the Bankruptcy Code; and (iii) neither Duff & Phelps nor an employee thereof has any connections with the Debtors, their creditors or other parties in interest in these cases, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

35. Duff & Phelps has represented to the Debtors that it will not represent any entities or individuals in these chapter 11 cases other than the Debtors or in connection with any matters that would be adverse to the interests of the Debtors.

36. Prior to the Petition Date, Duff & Phelps received $600,000 in compensation and $5,015.40 in expense reimbursements from the Debtors.

37. The Debtors have been informed that Duff & Phelps will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, Duff & Phelps will supplement its disclosure to the Court.

## **NOTICE**

38. Notice of this Application will be provided to: (i) the United States Trustee; (ii) the parties included on the Debtors' list of twenty (20) creditors holding the largest unsecured claims on a consolidated basis; (iii) counsel to General Electric Capital Corporation; (iv) Silver Point Finance, LLC; and (v) all parties that requested notice pursuant to Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*Signature page follows*

14
DB02:8987050.2                                                                                                    068674.1001

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit 2, granting the relief requested in the Application and such other and further relief as is just and proper.

Dated: December 28, 2009

**HEARTLAND PUBLICATIONS, LLC**

By: */s/ Michael C. Bush*
    Name: Michael C. Bush
    Title: President and Chief Executive Officer